## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**DARRIUS HOLMES,**                                                **PLAINTIFF**
**#5455-19**

**CASE NO. 4:19-CV-528-BD**

**V.**

**A. MCEWEN,** *et al.*                                          **DEFENDANTS**

### <u>ORDER</u>

**I.   <u>Background:</u>**

Darrius Holmes, a pre-trial detainee at the Pulaski County Regional Detention Facility (Detention Facility), filed this civil rights lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Doc. Nos. 1, 5) Mr. Holmes complains that Defendants McEwen and Barbee used excessive force against him and that Defendant Bangs was deliberately indifferent to his serious medical needs following the incident.

Defendants have now moved for summary judgment on Mr. Holmes's claims against them. (Doc. No. 23) Mr. Holmes has responded to the motion, and it is now ripe for decision. (Doc. Nos. 31, 32)

**II.   <u>Discussion:</u>**

A.  Standard

In a summary judgment, the Court rules on the case without a trial. A party is entitled to summary judgment if—but only if—the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56 and *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

B.  Factual Background

1.  Defendant Barbee's Testimony

According to Defendant Barbee, on July 15, 2020, he was escorting Mr. Holmes to intake to be fingerprinted. (Doc. No. 25-7 at p.1) At that time, Mr. Holmes refused to leave the unit and attempted to walk back to his cell. Defendant Barbee then used a "soft-open" hand technique to walk Mr. Holmes back toward the door. Because Mr. Holmes refused to walk with him, Defendant Barbee told Mr. Holmes to "cuff up." Defendant Barbee then handcuffed Mr. Holmes's right hand. When Defendant Barbee attempted to handcuff Mr. Holmes's left hand, Mr. Holmes put his hand behind his back so that Defendant Barbee could not access it. At that time, Defendant Barbee attempted to take Mr. Holmes down to the floor to gain control of the situation "due to the fear of him using the handcuff as a weapon." (Doc. No. 25-7 at p.2) Defendant Barbee fell to the floor, but maintained control of Mr. Holmes. Deputy Daniels (not a party to this lawsuit) gained control of Mr. Holmes's upper body, while Defendant Barbee held Mr. Holmes's legs. Once on the floor, Mr. Holmes continued to resist officers' attempts to handcuff him. Deputy Curley (not a party to this lawsuit) then sprayed oleoresin capsicum (OC spray) into Mr. Holmes's face at which point officers were able to handcuff him. Once in handcuffs, Mr. Holmes was taken to a multi-purpose room to be examined by medical personnel.

2.  Mr. Holmes's Testimony

In his deposition, Mr. Holmes testified that, on the date of the incident, Defendant Barbee came to his cell, but would not explain why he was being removed from his cell.

(Doc. No. 25-8 at p.4) When Defendant Barbee refused to provide any reason for his transfer, Mr. Holmes "stopped in his tracks." Mr. Holmes also stated that he attempted to walk away from Defendant Barbee and that he held his arms up and did not let "them put them down." (Doc. No. 25-8 at p.8) Mr. Holmes conceded, "I guess you could call that resisting." (Doc. No. 25-8 at p.8)

Mr. Holmes testified that Defendant Barbee "put his hands on me to the point where he pushed me up into the wall, gave me no direct orders or nothing." (Doc. No. 25-8 at pp.4-5) Mr. Holmes also stated that, after Defendant Barbee cuffed his left hand, "he grabbed me and tried to take me to the floor, but when he tried to take me to the floor, he fell to the floor himself." (Doc. No. 25-8 at p.6) Once on the floor, he testified, Defendant Barbee grabbed his legs and "fold[ed] them into like a pretzel and pushed all of his just about 300 pounds on my legs. And it shot pain all up through my back." (Doc. No. 25-8 at p.7) Mr. Holmes testified that he did not want to allow Defendant Barbee to put the other handcuff on him, "because I didn't do nothing." (Doc. No. 25-8 at p.11) At that time, other officers arrived and instructed Mr. Holmes not to resist. According to Mr. Holmes, he then "pushed away," and officers administered OC spray two, or three, times. (Doc. No. 25-8 at p.7) Mr. Holmes also testified that, at one point during the altercation, he was able to stand up, but that Deputy Daniels (not a party to this lawsuit) instructed him to get on the floor, which he did. (Doc. No. 25-8 at p.11)

3.  Video Evidence

Defendants attach a video recording of the underlying incident in support of their motion. Although the video lacks audio and does not, by itself, resolve the issues before

3

the Court, it does help clarify the parties' version of the events. In the video, Mr. Holmes can be seen arguing with Defendant Barbee and attempting to walk away from him. As he attempts to walk away, Defendant Barbee can be seen using an open hand on Mr. Holmes's back to guide him to the wall so that he may be handcuffed. Defendant Barbee attempts to take Mr. Holmes to the ground, then falls himself. Seconds later, multiple officers respond to the scene.

It is difficult to see what occurs after the other officers arrived; but less than a minute later, Mr. Holmes stands and is taken to a separate room. After three minutes, Mr. Holmes is escorted down the hall. Two minutes later, Mr. Holmes is provided paper towels and wipes his eyes. After Mr. Holmes is fingerprinted, approximately five minutes later, officers escort him to the EMT room where medical personnel decontaminate Mr. Holmes.

C.  Excessive-Force Claim

As a pre-trial detainee at the time of the incident, Mr. Holmes's excessive-force claim is analyzed under an objective reasonableness standard under the Fourteenth Amendment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015) (holding that the defendant's subjective state of mind is irrelevant). To prevail on his excessive-force claim, Mr. Holmes must demonstrate that "the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 2473. When making this determination, the Court must consider: (1) the need for force; (2) the relationship between that need and the degree of force used; (3) the threat the officer reasonably perceived; (4) the extent of injury inflicted; (5) whether force was used to punish or for a legitimate purpose, such as

4

maintaining order or security; and (6) whether a reasonable officer on the scene would have used such force under similar circumstances. *Id*.; *Jackson v. Buckman*, 756 F.3d 1060, 1067 (8th Cir. 2014).

1.   Defendant McEwen

Mr. Holmes sued Defendant McEwen because he "put his knee in [Mr. Holmes's] back, pushed [his] face into the ground, sprayed [him] on a couple of occasions." (Doc. No. 25-8 at p.5) According to Defendant McEwen's incident report and affidavit, he pulled out his OC spray in an attempt to spray Mr. Holmes, but another deputy deployed his OC spray first. (Doc. No. 25-6 at p.1) As a result, Defendant McEwen was sprayed in the eyes, then decontaminated himself.

Although Mr. Holmes testified that Defendant McEwen administered the OC spray, he has not presented any other evidence contradicting Defendant McEwen's testimony.[1] All officers present during the incident explain that Defendant Curley administered the OC spray. Furthermore, there is no evidence, with the exception of Mr. Holmes's own testimony, that Defendant McEwen was involved in holding Mr. Holmes on the ground or using any force against him. Accordingly, Mr. Holmes has failed to create any genuine issue of fact regarding Defendant McEwen's involvement in the underlying incident, and Defendant McEwen is entitled to judgment as a matter of law.

---

[1] In his deposition, Mr. Holmes acknowledged that Deputy Curley stated that he was the officer that administered the OC spray. (Doc. No. 25-8 at p.12)

2.   Defendant Barbee

According to all evidence in the record, Mr. Holmes became argumentative when Defendant Barbee removed him from his cell to escort him to the intake area. After Mr. Holmes began walking back to his cell, Defendant Barbee used an open hand to guide Mr. Holmes to the wall so that he could be handcuffed. After Defendant Barbee handcuffed Mr. Holmes's right hand, he refused to allow Defendant Barbee to handcuff his left hand. At that point, Defendant Barbee attempted to take Mr. Holmes to the floor so that he could gain control of the situation and to prevent Mr. Holmes from using the handcuff as a weapon. According to all witness statements in the record, Mr. Holmes: continued to resist; was combative; and refused to comply with the officers' orders. It is apparent from the video recording, officers struggled to control Mr. Holmes. (Doc. No. 25-4 at pp.2, 4, 7, 10, 12, 14) Furthermore, Mr. Holmes testified that his conduct could be fairly described as "resisting" and that he "pushed away" from officers while he was on the floor.

The undisputed evidence demonstrates that Defendant Barbee used the minimal degree of force necessary to gain control of a non-compliant detainee. No reasonable fact finder could conclude that this limited use of force by Defendant Barbee violated Mr. Holmes's constitutional rights. As a result, Defendant Barbee is entitled to judgment as a matter of law.

D.  Defendant Bangs – Deliberate-Indifference Claim[2]

In his deposition, Mr. Holmes testified that he sued Defendant Bangs because "[h]e's just disregarding my health and just didn't care; that was just negligence. He just didn't care about me having spray in my eyes while I went down there and got fingerprinted, and he told them don't basically assess me by medical unit until I'm through getting fingerprinted." (Doc. No. 25-8 at p.6) Mr. Holmes also testified that he never actually spoke to Defendant Bangs. (Doc. No. 25-8 at p.6) In addition, Mr. Holmes explains that after he was fingerprinted, "they allowed me to get a solution dampened with a little cotton swab on my eyes." (Doc. No. 25-8 at p.8) Mr. Holmes testified that it took between five and ten minutes to get fingerprinted. (Doc. No. 25-8 at p.8) He states that about 20 minutes passed between the time that he was sprayed and the time that he was allowed to decontaminate. (Doc. No. 25-8 at p.12)

A public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment ban against cruel punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).[3] "Deliberate indifference" is evidenced, however, only if "the

---

[2] In his deposition, Mr. Holmes also testified that he continued to experience eye problems and headaches following the incident. He does not allege, however, that any Defendant was involved with the alleged failure to provide him with adequate medical care after the incident.

[3] The due process standard of the Fourteenth Amendment applies to determine the constitutionality of a pre-trial detainee's deliberate-indifference claim. "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Owens v. Scott County Jail*, 328 F.3d 1026 (8th Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A knowing and conscious disregard of a detainee's medical needs is a mental state "akin to criminal recklessness." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Negligence, even gross negligence, is insufficient to establish liability. *Fourte v. Faulkner County*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

In *Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014), the Eighth Circuit held that an inmate could not prove that he suffered from a serious medical need when an officer turned off the shower to prevent him from decontaminating himself after he was sprayed with a chemical agent. Similarly, here, Mr. Holmes has not demonstrated that he suffered from a serious medical need. Furthermore, the Court is not aware of any case law in this Circuit mandating that an inmate be decontaminated within 20 minutes of being sprayed with a chemical agent. Finally, according to Mr. Holmes's own testimony, he never told Defendant Bangs that he needed to be decontaminated or that he was suffering in any way. Accordingly, a fact finder could hardly conclude that Defendant Bangs disregarded a known risk to Mr. Holmes's safety. Defendant Bangs also is entitled to judgment as a matter of law.

## III.   <u>Conclusion:</u>

The Defendants' motion for summary judgment (Doc. No. 23) is GRANTED. Mr. Holmes's claims are DISMISSED, with prejudice.

IT IS SO ORDERED, this 30th day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE